UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GROVE,

                 Petitioner,

v.

CONNIE HORTON,

                 Respondent.

Case No. 21-11393
Honorable Shalina D. Kumar
Magistrate Judge Elizabeth A. Stafford

_____

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS (ECF NO.1), DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER
LEAVE TO APPEAL *IN FORMA PAUPERIS***

_____

Petitioner Michael Grove, confined at the Ionia Maximum Correctional Facility in Ionia, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction for first-degree premeditated murder, M.C.L. 750.316(1)(a), felon in possession of a firearm, M.C.L. 750.224f, and possession of a firearm in the commission of a felony, M.C.L. 750.227b.  For the reasons that follow, the petition for writ of habeas corpus is **DENIED**.

**I. Background**

A jury convicted Petitioner in Wayne County Circuit Court.  This Court

recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir.

2009):

> Defendant's convictions arose from the October 1, 2016 fatal shooting of Randy Mack (Randy). The prosecution presented evidence at trial that Randy and his girlfriend, Tiffany Jones, were involved in a heated argument outside the home of Randy's brother, Ricky Mack (Ricky), shortly before the shooting. Jones knew defendant because defendant's uncle was the father of Jones's two children, and defendant's family helped care for Jones's children. During the argument, Jones sprayed mace in Randy's face and Randy threw a car part at Jones. Several witnesses observed Jones using her cellular phone during this period, and telephone records indicated that shortly before the shooting, Jones's phone communicated with a cell phone number later matched to one of defendant's phones.
>
> Witnesses testified that Randy eventually got into Jones's car and began slowly driving down the street. Ricky's girlfriend, Rainier Smith, testified that another vehicle went "flying up" the street, passed Ricky's house, and struck Jones's vehicle as Randy began to turn a corner. Ricky testified that after both vehicles stopped, the driver of the second vehicle got out of his car armed with a handgun, which he pointed at Jones's vehicle. Randy got out of the first vehicle and put his hands up in the air. Ricky testified that the gunman said to Randy, "I told you [racial slur]," before shooting Randy several times. The gunman then returned to his car and drove away, and Jones got into her car and also drove off, going in the same direction as the gunman. Ricky and Smith placed separate calls to 911 to report that

Randy had been shot. Randy later died from multiple gunshot wounds.

On April 26, 2017, five days before the scheduled trial, defendant requested an adjournment from the trial court in order to review the "voluminous cell phone records" and numerous recordings of defendant's jail calls that the prosecution had produced the day before, or in the alternative, that the trial court declare at least the cell phone records inadmissible at trial. The prosecution did not oppose the adjournment, but noted that the cellular phone records had actually been made available to defense counsel a week earlier, but that defense counsel had not picked them up until April 25. The prosecution stated that the recorded jailhouse calls, over 500 in number, had been provided to defense counsel on March 17, 2017; more than a month before trial. The trial court ruled that the recordings of the jail calls were admissible. Regarding the phone records, the trial court ultimately held that they were admissible, but ordered the prosecution to immediately inform defendant what specific records it planned to introduce at trial, as well as to immediately inform defense counsel if the prosecution believed any particular portion of the records might be exculpatory. The trial court declined to adjourn the trial, which began on May 1, 2017.

The principal issue at trial was the identity of the shooter. The prosecution's theory at trial was that Jones had contacted defendant on her cell phone during her argument with Randy, and that defendant, who lived nearby, was the person who arrived at the scene, and who confronted and shot Randy. Ricky identified defendant as the shooter in a double-blind photographic lineup and also made an in-court identification. Smith also made an in-court identification of defendant as the shooter. The prosecution introduced the telephone records to show that Jones had communicated with defendant shortly before the shooting, and introduced evidence that both of their phones were in the area at the time of the shooting. On the fourth day of trial, the prosecution sought to admit into evidence a computer disc containing telephone records for cellular phones

associated with defendant and Jones. Defense counsel objected to the admission of the computer disc on the ground that he had not been able to review the contents of the disc. The prosecution asserted that the disc merely contained electronic copies of records that had already been provided to defendant. Defense counsel ultimately agreed to review the disc over a three-day break in the trial.

*People v. Grove*, No. 339118, 2019 WL 1547403, at *1–2 (Mich. Ct. App. Apr. 9, 2019); *lv. den.* 505 Mich. 995, 939 N.W.2d 263 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) Petitioner was denied due process and the effective assistance of counsel when the judge refused to grant counsel a continuance, (2) the prosecutor failed to provide critical discovery to the defense in a timely manner, (3) the prosecutor committed misconduct by commenting on Petitioner's failure to testify, (4) the evidence was legally insufficient to convict, and (5) the in-court identifications were the product of suggestive identification procedures.

The respondent filed a motion to dismiss the petition (ECF No. 5) on the ground that it was not timely filed in accordance with the statute of limitations contained in 28 U.S.C. § 2244 (d)(1).   The Court denied the motion, ruling that Petitioner was entitled to equitable tolling of the limitations period due to the various restrictions that were placed on

inmates during the Coronavirus Pandemic.  The Court ordered a response on the merits. ECF No. 8.

Respondent filed an answer on the merits. ECF No. 10.  Petitioner filed a reply. ECF No. 12.  Petitioner also filed a motion to stay the proceedings so that he could exhaust additional claims with the state courts. ECF No. 11.  The Court stayed the proceedings and administratively closed the case. ECF No. 13.

Petitioner sent a letter to this Court (ECF No. 14), indicating that he wished to proceed only on the claims that were raised in his initial petition. The Court reopened the case to the Court's active docket. ECF No. 15.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas

relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III. Discussion

### A. Procedurally Defaulted Claims (Claims # 3 and # 5)

"For purposes of judicial clarity, the Court discusses the procedural default issue first." *Young v. Prelesnik*, No. 06-CV-14754, 2010 WL 2891720, at *2 (E.D. Mich. July 22, 2010).  Respondent argues that Petitioner failed to preserve his third and fifth claims by not objecting at trial.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

The Sixth Circuit noted that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018).

Michigan law requires defendants in criminal cases to present their claims in the trial courts in order to preserve them for appellate review. *See People v. Carines,* 460 Mich. 750, 761-64; 597 N.W.2d 130 (1999).  The Michigan Court of Appeals concluded that Petitioner's third claim alleging prosecutorial misconduct was unpreserved because Petitioner failed to

Page **8** of **24**

object at trial. *People v. Grove*, 2019 WL 1547403, at * 4 (Mich. Ct. App. Apr. 9, 2019).  The Michigan Court of Appeals likewise concluded that Petitioner's fifth claim challenging the suggestiveness of the pre-trial identification procedures was unpreserved based on Petitioner's failure to preserve the claim at the trial level.  *Id*. at *7.

These claims were also reviewed for plain error, *id*. at * 4, 7, but the Michigan Court of Appeals' plain error review of these claims is not a waiver of the state procedural default. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Instead, this Court must view the Michigan Court of Appeals' review of the third and fifth claims as enforcement of the procedural default. *See Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).

Petitioner offered no reasons for his failure to preserve his third and fifth claims at the trial level.  Petitioner did not raise a claim of ineffective assistance of counsel, or any other reason, to excuse the procedural defaults.  By failing to raise any claim or issue to excuse the procedural default, Petitioner "forfeited the question of cause and prejudice." *Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020).  Although Petitioner originally sought a stay of the proceedings so that he could return to the

trial courts and file a post-conviction motion to allege that trial counsel was ineffective for failing to object (ECF No. 11, PageID. 1565-66), Petitioner subsequently asked this Court to reopen the case and to proceed only on the claims raised in his original petition without returning to the state courts to exhaust any ineffective assistance of counsel claims. For ineffective assistance of counsel to constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Because Petitioner never exhausted his ineffective assistance of counsel claims in the state courts, the alleged ineffectiveness of counsel cannot constitute cause to excuse Petitioner's default. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006).

Additionally, Petitioner did not present any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claims in spite of the procedural default.  A sufficiency of evidence claim (Claim # 4) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (actual innocence exception to procedural default doctrine requires new evidence which affirmatively demonstrates innocence;

Page **10** of **24**

evidence must do more than simply undermine the finding of guilt).
Petitioner is not entitled to relief on his third and fifth claims.

### B. Denial of Continuance/Due Process Claim (Claim # 1)

Petitioner argues that his rights to a fair trial, due process, and the assistance of counsel were violated when the judge refused to grant defense counsel's motion for an adjournment of the trial due to the late production of cellphone records and jailhouse telephone calls.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *See Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004). In order to obtain habeas relief, a habeas petitioner must show that the denial of his or her request for a continuance resulted in actual prejudice to his or her defense. *Id.*; *See also Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense. *Powell*, 332 F. 3d at 396.

The Michigan Court of Appeals rejected Petitioner's claim, holding that he failed to show that he was prejudiced by the judge's refusal to adjourn the trial:

> At trial, a police officer testified about the manual extraction of data from defendant's flip-style cell phones. When the matter was discussed on the Friday before trial, the parties were not sure whether the information in the extraction reports would have any evidentiary value. The trial court ruled that defense counsel would be permitted to introduce anything in the extraction records that would aid defendant's defense, and ordered the prosecution to review the records and immediately notify defense counsel of any specific information that the prosecution intended to introduce at trial, or any other information that could be considered exculpatory.
>
> Although the extraction data was produced late, the trial court made sure that defense counsel would have time to review the data, and it also fashioned an arrangement by which defense counsel would be immediately notified of any specific information that the prosecution intended to introduce, as well as any information that could be considered exculpatory. The trial court also agreed to revisit the matter before the start of trial to address the admissibility of any disputed information, yet defense counsel did not raise any issues regarding the admission of the telephone records or renew his request for an adjournment. Even if an adjournment would have been justified, the trial court's decision to instead adopt a procedure by which defense counsel would have an opportunity to review the material before trial and receive prompt notice of any specific information the prosecution intended to introduce, or that might be considered exculpatory, was within the range of reasonable and principled outcomes. Further, defendant has not explained how he was unprepared to address or respond to any specific information in the extraction reports. Indeed, the data involved information obtained from the phones in defendant's possession at the time of his arrest.

Therefore, he should not have been surprised by any of that information. Accordingly, defendant has not demonstrated that he was prejudiced by the late production of that information.

Additionally, the prosecution at trial offered defense counsel a computer disc that contained telephone records associated with defendant's and Jones's cellular phones. Although such a disc had not previously been provided to the defense, the contents of the disc consisted of the same paper records that the defense had received earlier, but in a different format. Defense counsel objected to the admission of the disc because he was concerned that it might contain new information that had not been included in the records he had received earlier. The trial court allowed defense counsel to review the disc over a three-day break in the trial, after which he could revisit the matter or recall for cross-examination the prosecution's expert on forensic analysis of cellular call detail records and cell tower mapping. Thereafter, defense counsel recalled the prosecution's expert, but did not raise any further issue with regard to the late production of the disc. Nor was the disc ever discovered to have contained new information not previously produced. We conclude that defendant has not demonstrated that he was prejudiced by the trial court's failure to adjourn the trial based on the production of the computer disc of cellular phone records.

*People v. Grove*, 2019 WL 1547403, at * 3 (internal citations omitted).

In *United States v. Garner,* 507 F. 3d 399 (6th Cir. 2007), the Sixth Circuit held that the district court abused its discretion in denying defense counsel's request for a continuance to investigate records from the victim's cell phone, which was used to make and receive calls by the hijacker or hijackers during the crime, which the prosecution turned over to defense

counsel on the morning of the defendant's carjacking trial, since defense

counsel did not have enough time to identify and call the numbers in the log

as required to put on a complete defense. *Id.* at 408-09.

Petitioner's case is distinguishable from the case in *Garner.*  The

telephone records were not turned over to Petitioner only on the morning of

trial, as was the case in *Garner.*  The recorded jailhouse telephone calls

were made available to defense counsel on March 17, 2017, more than a

month before trial began on May 1, 2017.  Defense counsel received the

cellphone records on April 25, 2017, six days before trial, although the

prosecutor claimed that these records were available a week earlier.

Petitioner's counsel had over a month to review the jailhouse telephone

calls and essentially a week to review the cellphone records after receiving

them on April 25, 2017.  Petitioner has not shown that this was an

insufficient time for counsel to review the various telephone records.

Indeed, the Sixth Circuit in *Garner* indicated that a short continuance of the

trial for "perhaps only of a week" would have been adequate for defense

counsel in that case to review the telephone records after receiving them

the morning of trial. *Garner,* 507 F.3d at 409.  Here, counsel for Petitioner

had over a month to review the jailhouse telephone calls and six days to

review the cellphone records prior to the first day of trial.  Petitioner failed to show that counsel needed more time to review these records.

Petitioner also failed to show that the telephone records or the computer disc containing the records had any exculpatory or impeaching value.  Petitioner claims that he learned after trial that the cellphone records show that all the telephone calls between Ms. Jones and him were answered by each of their voicemails and that they did not actually speak with one another. ECF No. 12, PageID. 1589.  Petitioner argues that the records show there was no verbal communications between Ms. Jones and himself prior to the shooting.  The prosecutor used the telephone contacts between Ms. Jones and Petitioner to establish Petitioner's identity as the shooter and also to prove premeditation.

Petitioner did not provide this Court with any evidence to support his claim that all of the telephone calls between Ms. Jones and himself went to voicemail.  In any event, even if the two left each other messages on voicemail rather than spoke to each other over the telephone, this would not preclude the jury from finding that Ms. Jones contacted Petitioner and asked him to intervene on her behalf against the victim, so as to support the jury's finding that Petitioner was the shooter and that he acted with

premeditation and deliberation. Petitioner failed to show that the judge's failure to grant a continuance prejudiced his defense; he is thus not entitled to relief on this claim.

### C. Discovery Claim (Claim # 2)

Petitioner claims that the prosecutor violated the discovery order by failing to turn over the various telephone records in a timely manner. Nevertheless, it is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F. 2d 1275, 1281 (6th Cir.1988) (citing *Weatherford*). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review; it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F. 3d 416, 441 (6th Cir. 2002). Thus, Petitioner would not be entitled to habeas relief simply because the prosecutor violated M.C.R. 6.201 or other Michigan rules regarding discovery.

It is true that suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is

material to either guilt or punishment of the defendant, irrespective of the

good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87

(1963).  Evidence is material only if there is a reasonable probability that,

had the evidence been disclosed to the defense, the result of the

proceeding would have been different.  A "reasonable probability is a

probability sufficient to undermine confidence in the outcome." *United

States v. Bagley,* 473 U.S. 667, 683 (1985).

In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme

Court articulated three components or essential elements of a *Brady* claim:

(1) the evidence at issue must be favorable to the accused, either because

it is exculpatory, or because it is impeaching; (2) the evidence must have

been suppressed by the State, either willfully or inadvertently; and (3)

prejudice must have ensued.  "Prejudice (or materiality) in the *Brady*

context is a difficult test to meet." *Jamison v. Collins*, 291 F. 3d 380, 388

(6th Cir. 2002).

A habeas petitioner bears the burden of showing the prosecution

suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853

(6th Cir. 2012).  Allegations that are merely conclusory or which are purely

speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d

Page **17** of **24**

711, 724 (E.D. Mich. 2004).   "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).   Petitioner failed to show that any of the telephone records exculpated him of this crime.   Petitioner is therefore not entitled to habeas relief on his *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

Petitioner's *Brady* claim also fails because the telephone records were turned over to defense counsel prior to trial.   *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002) (internal citations omitted).   If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *See also United States v. Benc*s, 28 F. 3d 555, 560-61 (6th Cir. 1994).   The Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation.   Such a standard would 'necessarily encompass incriminating

evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (quoting *United States v. Agurs,* 427 U.S. 97, 112, n. 20 (1976)).  Petitioner is not entitled to relief on his second claim.

### D. Sufficiency of Evidence Claim (Claim # 4)

Petitioner argues that the evidence was insufficient to establish his identity as the shooter. Unquestionably, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679

Page **20** of **24**

(6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its

assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.

3d 780, 788 (6th Cir. 2003).

Under Michigan law, "the identity of a defendant as the perpetrator of

the crimes charged is an element of the offense and must be proved

beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th

Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656

(1970)).  Here, Petitioner argues that the eyewitnesses' identification of him

as the shooter was unreliable and insufficient to establish his identity as the

perpetrator. Two eyewitnesses positively identified Petitioner as the shooter

at trial.  This evidence is sufficient to establish Petitioner's identity as the

perpetrator. *See United States v. Sullivan*, 431 F.3d 976, 983–84 (6th Cir.

2005).  Petitioner's attack of the eyewitness identifications essentially asks

this Court to re-weigh the testimony and credibility of the evidence, which

this Court cannot do. *See United States v. Campbell*, 18 F. App'x 355, 358

(6th Cir. 2001) (quoting *United States v. Tipton*, 11 F.3d 602, 609 (6th Cir.

1993)).  In sum, Petitioner's insufficiency of evidence claim rests on an

allegation of the eyewitnesses' credibility, which is the province of the jury.

*See Tyler v. Mitchell*, 416 F. 3d 500, 505 (6th Cir. 2005). Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner

Page **22** of **24**

states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith. Thus, Petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. <u>ORDER</u>

The Court **DENIES** the petition for writ of habeas corpus (ECF No. 1) and a Certificate of Appealability**.** The Court **GRANTS** Petitioner leave to appeal *in forma pauperis.*

s/ Shalina D. Kumar

Page <strong>23</strong> of <strong>24</strong>

Dated: August 2, 2023

SHALINA D. KUMAR
United States District Judge